**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1634
_____

GLORIA GAIL KURNS,
Executrix of The Estate of George M. Corson, Deceased;
FREIDA E JUNG CORSON, Widow In Her Own Right

v.

A.W. CHESTERTON INC., et al.;
BOC INC., Airco Welders Supply Inc.;
RAILROAD FRICTION PRODUCTS CORPORATION;
VIAD CORP.

Gloria Gail Kurns;
Freida E. Jung Corson,
                              Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 08-2216)
District Judge: Hon. Mitchell S. Goldberg

Argued January 11, 2010

Before: RENDELL, AMBRO, and CHAGARES, Circuit Judges.

(Filed September 9, 2010)

_____


Robert E. Paul (argued)

Richard P. Myers
1608 Walnut Street
Suite 500
Philadelphia, PA 19103
Counsel for Appellant

W. Thomas McGough, Jr. (argued)
Robert H. Owen
Reed Smith LLP
Reed Smith Centre, 225 Fifth Avenue
Pittsburgh, PA 15222-2716
Counsel for Appellee Railroad Friction Products Corporation

Daniel Markewich (argued)
Ellen G. Margolis
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
24 Whitehall Street
New York, NY 10004

David P. Helwig
Marks, O'Neill, O'Brien & Courteney, P.C.
2600 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
Counsel for Appellee Viad Corporation

_____

OPINION
_____

CHAGARES, Circuit Judge.

Appellants Gloria Gail Kurns and Freida E. Jung Corson brought suit on behalf of the decedent, George M. Corson, asserting a number of state law causes of action related to his alleged exposure to asbestos during his years employed by a railroad company. While the suit was filed in state court, the matter was removed to federal court on the basis of diversity jurisdiction, and the District Court granted the appellees Viad

2

Corporation and Railroad Friction Products Corporation's motions for summary judgment, holding that the plaintiffs' claims were all preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701, et seq. ("LIA"). The plaintiffs appeal from the District Court's entry of summary judgment on behalf of the appellees and argue that their claims are not preempted by federal law. For the reasons set forth below, we will affirm.

I.

From 1947 to 1994, George M. Corson (the "decedent") worked as a welder, machinist, and supervisor for the Chicago, Milwaukee, St. Paul, & Pacific Railroad. He was employed at different facilities in Montana and South Dakota. Much of his job involved removing insulation from locomotive boilers and putting brake shoes on the locomotives. The plaintiffs claim that throughout this time period, the decedent was repeatedly exposed to asbestos from the insulation and the brake shoes. After his retirement, the decedent was diagnosed with malignant mesothelioma, the only known cause of which is exposure to asbestos. He passed away after the initiation of this litigation, and is represented by both his widow and the executor of his estate.

The plaintiffs sued the two appellees, as well as a number of other defendants (fifty-nine defendants in all), in Pennsylvania state court, seeking to recover compensatory and punitive damages for the harmful effects to the decedent's health resulting from his exposure to asbestos. The plaintiffs alleged that the decedent installed brake pads containing asbestos that were manufactured and sold by Railroad Friction Products Corporation ("RFPC"). They further alleged that Viad was a successor in interest to a different company that manufactured and sold engine valves, also containing asbestos, which the decedent installed. Viad moved for summary judgment on the grounds that the plaintiffs' claims were preempted by federal law, but the state court denied that motion. All of the defendants then moved for summary judgment on the grounds that there was insufficient evidence linking their products to the decedent's exposure to asbestos. The state court granted these motions with regard to all of the defendants except Viad and RFPC.

3

The plaintiffs brought this case in state court because one of the other original defendants defeated diversity jurisdiction, but when the state court granted that defendant's motion for summary judgment and that party was released from the case, there was complete diversity of citizenship between the parties. At that point, Viad and RFPC removed the case to the District Court. Once in federal court, the defendants again filed a motion for summary judgment on the grounds that the plaintiffs' claims were preempted by federal law.

On February 5, 2009, the District Court granted summary judgment in favor of RFPC and Viad, holding that the plaintiffs' state law product liability tort claims were preempted by federal law, namely the LIA.[1] The District Court held that the LIA occupies the field of regulating locomotives and locomotive parts used in interstate commerce based on the Supreme Court's decision in Napier v. Atlantic Coast Line Railroad Co., 272 U.S. 605, 613 (1926), in which the court explained that the LIA occupies the field of locomotive equipment.[2] The District Court rejected the plaintiffs' contention that federal law only preempted state regulations involving locomotives which were "in use" at the time, and that since their case involved the actual installation, repair, and

---

[1] The LIA provides, inter alia, that:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances --
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury.

49 U.S.C. § 20701.

[2] The District Court noted that other district courts in our circuit have reached similar conclusions. See, e.g., Consol. Rail Corp. v. Pa. Pub. Util. Comm'n, 536 F. Supp. 653, 655 (E.D. Pa. 1982) (holding that the LIA preempts the field of locomotive equipment and therefore states cannot regulate speed recorders in locomotives), aff'd mem., 696 F.2d 981 (3d Cir. 1982).

removal of locomotive parts, federal preemption did not apply. The Court held that there was no indication in the law that Congress intended to make such a distinction. Finally, the Court rejected the plaintiffs' claim that the Federal Railroad Safety Act ("FRSA") materially abrogated the scope of federal preemption of the entire field of railroad parts. The Court held that the FRSA had not changed the scope of LIA preemption to such an extent that it would no longer preempt the plaintiffs' claims.

The plaintiffs filed a timely appeal from the District Court's order.

## II.

The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). This Court has jurisdiction under 28 U.S.C. § 1291. We review a district court's order granting summary judgment under a plenary standard of review. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a grant of summary judgment, we view all evidence in the light most favorable to the non-moving party, and will affirm only if there is no genuine issue of material fact. Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008).

## III.

On appeal, the plaintiffs contend that state law design defect and failure to warn product liability claims are not preempted by the LIA. The plaintiffs urge that the LIA preempts the regulation of locomotive equipment, but does not preempt "railroad workers' personal injury claims under state tort law for failure to warn about hazardous substances released during the repair of locomotives which [are] not in service." Plaintiffs' Br. at 19. We disagree and hold that the plaintiffs' claims are preempted by the LIA.

## A.

5

We first turn to the plaintiffs' contention that the LIA does not preempt a state law or regulation related to working conditions in a facility that manufactures, installs, repairs, or removes locomotive parts and appurtenances.

The doctrine of preemption is grounded in the Supremacy Clause of Article VI of the Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI. Under that clause, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." Free v. Bland, 369 U.S. 663, 666 (1962). In cases like the present one, courts are called upon to determine whether an act of Congress preempts state law. See Deweese v. Nat'l R.R. Passenger Corp., 590 F.3d 239, 245 (3d Cir. 2009).

There are three distinct types of federal preemption: express preemption, implied conflict preemption, and field preemption. Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985); Bruesewitz v. Wyeth Inc., 561 F.3d 233, 238-39 (3d Cir. 2009). Express preemption occurs when a federal law contains express language providing for the preemption of any conflicting state law. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001). Implied conflict preemption occurs when it is either "impossible for a private party to comply with both state and federal requirements, or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941) (citation omitted)). The final type of preemption, which is relevant to this case, is field preemption, which arises when a state law or regulation intrudes upon a "field reserved for federal regulation." United States v. Locke, 529 U.S. 89, 111 (1990).

When determining whether a federal law or laws serve to preempt an entire field, "[o]ur inquiry into the scope of a statute's pre-emptive effect is guided by the rule that '[t]he purpose of Congress is the ultimate touchstone in every pre-emption case.'" Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)); see also Deweese, 590 F.3d at 246. In doing so, we consider the intended

purpose of the federal regulatory scheme, and what impact any state regulation would have on that scheme. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373-74 (2000). The Supreme Court has recognized that there is a presumption against field preemption unless congressional intent to preempt is clear and manifest. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992).

The LIA[3] was originally passed in 1911, and was amended in 1915 and 1924. In pertinent part, it provides that "[a] railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances -- (1) are in proper condition and safe to operate without unnecessary danger of personal injury . . . ." 49 U.S.C. § 20701. While the statute itself is silent as to any preemptive effect, one can easily understand how a state law or action which regulates whether a locomotive or any of its parts and appurtenances "are in proper condition and safe to operate" could conflict with federal safety regulations.

The Supreme Court has explicitly addressed the question of the scope of LIA preemption. In Napier, the Court held that "the power delegated to the [Interstate Commerce] Commission[4] by the Boiler Inspection Act as amended is a general one. It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances."[5] 272 U.S. at 611.

---

[3] The LIA was originally known as the Boiler Inspection Act, or BIA, and is referred to as such in much of the case law cited and quoted throughout this opinion. We simply note that this is a distinction without a difference, and both terms refer to 49 U.S.C. § 20701, et seq.

[4] The LIA initially conferred regulatory authority over the construction and material of locomotives and appurtenances to the Interstate Commerce Commission. That regulatory authority has since been transferred to the Department of Transportation. 45 U.S.C. § 28.

[5] In a later decision, the Court defined the scope of "every part of the locomotive and tender and of all appurtenances" as

7

The Court went on to "hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of the authority conferred upon the Commission leads to that conclusion." Id. at 613 (emphasis added).[6] The Court also specifically noted that the delegation of powers to a federal agency meant that any state law in that area was preempted, regardless of whether the agency actually exercised those powers:

It is also urged that, even if the Commission has

---

"[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission." S. Ry. Co. v. Lunsford, 297 U.S. 398, 402 (1936).

The plaintiffs urge that the LIA only governs "on the road injuries" and is irrelevant when a locomotive is not "in use." Plaintiffs' Br. at 20. The plaintiffs are correct that liability under the LIA only exists if the locomotive was in use at the time of the accident. See Crockett v. Long Island R.R., 65 F.3d 274, 277 (2d Cir. 1995). Here, however, the plaintiffs are not asserting or contesting liability under the LIA. But even if the fact that the locomotive parts and appurtenances that allegedly contained asbestos in the present case were not connected to a locomotive which was in transit at the time of exposure prevents the plaintiffs from bringing an action under the LIA, there are other federal causes of action available for such a claim, as discussed infra. This has no impact on the scope of preemption.

[6] We are of course bound by a direct holding of the Supreme Court of the United States. To the extent that the plaintiffs argue that more recent decisions of the Supreme Court imply that the Court may now view this issue differently, we simply note that the Supreme Court has held that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484 (1989).

8

power to prescribe an automatic firebox door and a cab curtain, it has not done so; and that it has made no other requirement inconsistent with the state legislation. This, also, if true, is without legal significance. The fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power.

Id. The Court also explicitly addressed the issue of congressional intent, holding that although the original LIA did not show that Congress intended federal law to preempt the entire field, it was clear from the law as amended that this was precisely what Congress intended. Id. at 611.[7]

Thus, the LIA preempts a broad field relating to the health and safety of railroad workers, including requirements governing the design and construction of locomotives, as well as equipment selection and installation. Id. at 611-12; see also Urie v. Thompson, 337 U.S. 163, 191-93 (1949) (holding that the LIA covers claims relating to railroad employees' health, including diseases as well as accidents); Oglesby v. Del. & Hudson Ry. Co., 180 F.3d 458, 460 (2d Cir. 1999) ("Through [the LIA] and other acts, [Congress] conferred on the Interstate Commerce Commission (and now the Department of Transportation) full authority over virtually all aspects of locomotive safety to the exclusion of the states."); Law v. Gen. Motors Corp., 114 F.3d 908, 910 (9th Cir. 1996) ("It has long been settled that Congress intended federal law to occupy the field of locomotive equipment and safety, particularly as it relates to injuries suffered by railroad workers in the course of their employment.").

---

[7] The plaintiffs engage in a lengthy discussion of implied conflict preemption under Wyeth v. Levine, 129 S. Ct. 1187 (2009). Implied conflict preemption occurs when Congress has not displaced all state law in an area, but state law actually conflicts with federal law. Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 243 (3d Cir. 2008). Because we find that field preemption under the LIA bars the plaintiffs' claims, we need not analyze implied conflict preemption.

Here, the brake pads and engine valves that allegedly caused asbestos exposure during installation are clearly locomotive equipment and are therefore within the scope of the LIA. See Oglesby, 180 F.3d at 461 (holding that an engineer's seat in a locomotive is obviously within the scope of the LIA). The plaintiffs concede that regulations regarding locomotive equipment are preempted by the LIA, but contend that this preemption does not bar state tort law product liability claims, including failure-to-warn claims, arising from the installation of locomotive parts. However, we find that the plaintiffs' claims "fall[ ] squarely within the field of employment hazards that the [LIA] was intended to cover." Id. at 462.

The goal of the LIA is to "prevent the paralyzing effect on railroads from prescription by each state of the safety devices obligatory on locomotives that would pass through many of them." Id. at 461 (quotation marks omitted); see also Law, 114 F.3d at 910 ("The virtue of uniform national regulation 'is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state.'" (quoting S. Pac. Transp. Co. v. Pub. Util. Comm'n of Or., 9 F.3d 807, 811 (9th Cir. 1993))). In order to accomplish this goal, suits against manufacturers of locomotive parts for product liability claims should be included in the scope of the LIA's field preemption, particularly because the LIA governs both the design and the construction of a locomotive's parts.[8] See Oglesby, 180 F.3d at

---

[8] The plaintiffs also argue that even if this Court holds that their negligence and other state law claims are preempted by the LIA, their claim for failure to warn is not preempted because it involves a failure to place a warning label on some of the products in question, and does not directly involve the parts and appurtenances themselves. This is merely an attempt at artful pleading. The gravamen of the plaintiffs' claim is still that the decedent suffered harmful consequences as a result of his exposure to asbestos contained in locomotive parts and appurtenances. The plaintiffs may not merely rebrand a claim in order to avoid preemption. See Oglesby, 180 F.3d at 461 (rejecting a plaintiff's attempt to differentiate failure to warn cause of action from other product liability claims, calling it "a distinction without a

462 ("[T]he results that Congress had hoped to obtain through the [LIA] would be accomplished best by including the manufacturer within the statute's coverage.").

If each state had its own standards for liability for railroad manufacturers, equipment would have to be designed so that it could be changed to fit these standards as the trains crossed state lines, or adhere to the standard of the most restrictive states. First Sec. Bank v. Union Pac. R.R. Co., 152 F.3d 877, 880-81 (8th Cir. 1998); Law, 114 F.3d at 910-11; cf. British Airways Bd. v. Port Auth. of N.Y. & N.J., 558 F.2d 75, 83 (2d Cir. 1977) (holding that if states were allowed to pass laws or regulations impacting the airline industry, "[t]he likelihood of multiple, inconsistent rules would be a dagger pointed at the heart of commerce"). Congress's goal of uniform railroad equipment regulation would clearly be impeded by state product liability suits against manufacturers, the purpose of which is, in part, to persuade defendants to comply with a standard of care established by the state. See Law, 114 F.3d at 911. Furthermore, there is "no doubt" that the design of locomotive parts and warning requirements are within the scope of the Secretary of Transportation's authority. Id. As the Court of Appeals for the Ninth Circuit has observed:

> The [LIA] preempts any state action that would affect the "design, the construction, and the material" of locomotives. Napier, 272 U.S. at 611. Imposing tort liability on railroad equipment manufacturers would do just that, by forcing them to conform to design and construction standards imposed by the states. This would transfer the regulatory locus from the Secretary of Transportation to the state courts -- a result the [LIA] was clearly intended to foreclose.

Id. at 911-12.

While no federal court of appeals has faced the precise issue of whether the LIA preempts state law causes of action arising out of workplace exposure to asbestos in the course of manufacturing

difference"); see also Law, 114 F.3d at 910-13 (treating failure to warn claim as a product liability claim).

11

or working with railroad parts, the highest courts in a number of states have considered this issue, and those courts have unanimously held such claims to be preempted. See, e.g., Darby v. A-Best Prods. Co., 811 N.E.2d 1117, 1125-26 (Ohio 2004); In re W. Va. Asbestos Litig., 592 S.E.2d 818, 822 (W. Va. 2003); Gen. Motors Corp. v. Kilgore, 853 So. 2d 171, 176-80 (Ala. 2002); Scheiding v. Gen. Motors Corp., 993 P.2d 996, 998-1004 (Cal. 2000). The Supreme Court of West Virginia, after conducting an exhaustive survey of the relevant case law, concluded:

> In spite of the strong presumption against federal preemption . . . , an overwhelming body of case law persuades us that, through passage of the Boiler Inspection Act, Congress has occupied the field of railroad safety so pervasively that plaintiffs' claims against the defendants are preempted. We do not reach this conclusion lightly, but find any other path blocked by an avalanche of adverse authority from other jurisdictions, both state and federal.

In re W. Va. Asbestos Litig., 592 S.E.2d at 822 (footnote omitted).

We agree with the vast majority of courts that have been called upon to decide the issue of the scope of LIA preemption. In Napier, the Supreme Court clearly held that in its amendments to the LIA, Congress intended to preempt all state laws, regulations, and causes of action which involve "the design, the construction, and the material of every part of the locomotive and tender of all appurtenances." 272 U.S. at 611. The plaintiffs' claims undeniably involve the material used in locomotive parts, both of which fall under the definition of "parts and appurtenances" of locomotives, S. Ry. Co. v. Lunsford, 297 U.S. 398, 402 (1936), and therefore are preempted by federal law. See Napier, 272 U.S. at 611.

We agree with the District Court's determination that Congress's intent in enacting and amending the LIA was to preempt completely the field of railroad parts and appurtenances, and that the locomotive components which are the subject of the plaintiffs' product liability action undoubtedly fall within that category.

12

B.

The plaintiffs urge that the LIA does not purport to encompass the field of safety in the manufacture of locomotives because the Occupational Health and Safety Act of 1970, 29 U.S.C. § 651, et seq., governs working conditions in a repair shop. However, the plaintiffs' claims do not involve hazardous working conditions. Instead, the plaintiffs assert product liability claims (failure to warn and design defect claims) against the manufacturers of certain locomotive parts that allegedly contained asbestos. "Working conditions" refers to the "environmental area in which an employee customarily goes about his daily tasks." Columbia Gas of Pa., Inc. v. Marshall, 636 F.2d 913, 916 (3d Cir. 1980) (quotation marks omitted). We also note that the District Court pointed out the difference between claims involving railroad working conditions, see Terminal R.R. Ass'n of St. Louis v. Bhd. of R.R. Trainmen, 318 U.S. 1, 2 (1943) (upholding an Illinois law requiring cabooses), and a claim, as here, emanating from the material used to construct locomotive parts.

Further, we note that federal law offers recourse to workers exposed to asbestos under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, et seq., which provides a federal cause of action for any railroad employee injured on the job due to employer negligence. Contrary to the plaintiffs' claims, LIA and FELA provide a broad, reasonable, and comprehensive legal framework under which railroad industry employees injured by employer negligence may seek damages. See Law, 114 F.3d at 912 (discussing the availability of claims brought under FELA as recourse for injuries suffered by railroad industry employees in the course of their employment). FELA has been recognized as the appropriate avenue of relief in several of the state supreme court cases discussed supra, which held that tort claims claiming asbestos exposure and seeking recourse under state law were preempted by the LIA. See, e.g., In re W. Va. Asbestos Litig., 592 S.E.2d at 822, n.2; Scheiding, 993 P.2d at 1001.

C.

The plaintiffs also argued before the District Court, adopting the reasoning of the Pennsylvania Supreme Court in Norfolk &

13

Western Railway Co. v. Pennsylvania Public Utility Commission, 413 A.2d 1037 (Pa. 1980), that the FRSA narrowed the scope of the LIA's preemption of state laws and regulations regarding locomotive equipment. We disagree.

The Norfolk & Western decision is the lone exception to the nearly unanimous interpretation of the breadth of LIA preemption. In Norfolk & Western, the Supreme Court of Pennsylvania rejected the assertion that the LIA completely preempted the field of railroad equipment. 413 A.2d 1037. The court held that "[w]hile the broad language of the Act at one time could have been interpreted as reflecting Congressional intent to preempt the entire field of railroad safety, the enactment of section 205 of the Federal Railroad Safety Act in 1970 (FRSA) no longer permits that reading." Id. at 1043. Section 205, in relevant part, provided that "[a] state may adopt or continue in force any law, rule, regulation, order or standard relating to railroad safety until such time as the Secretary (of Transportation) has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement." 45 U.S.C. § 434. The court held that in certain circumstances this statute enabled states to enact rules which regulated railroad safety.

Significantly, however, no court outside of Pennsylvania has followed this ruling or its reasoning. Just two years after Norfolk & Western was decided, in fact, a federal district court in Pennsylvania explicitly rejected Norfolk & Western as being incompatible with Napier. Consol. Rail Corp. v. Pa. Pub. Util. Comm'n, 536 F. Supp. 653 (E.D. Pa. 1982), aff'd mem., 696 F.2d 981 (3d Cir. 1982) (table opinion). That court, noting that the express purpose of the FRSA was to maintain broad federal regulatory authority and ensure nationwide uniformity of locomotive standards, held:

> [I]n areas already governed by the Locomotive Inspection Act, the states had no regulations. If the Railroad Safety Act were to change the preemption test for those areas, the states could expand their regulatory authority, allowing a new reservoir of differing, and possibly incompatible, railroad-safety law. This would run counter to Congress's purpose of uniform national regulation. It is contrary to

14

Congress's purpose in passing the Railroad Safety Act to allow the states to reoccupy fields from which they previously had been displaced. Thus, I conclude that Congress did not intend the preemption provision of the Railroad Safety Act to modify the total-preemptive effect of the Locomotive Inspection Act.

Id. at 656-57 (footnotes omitted). We similarly reject the reasoning of the Norfolk & Western court, and agree that Napier compels a holding of preemption.

As previously noted, when determining whether a state law cause of action is preempted, our "'ultimate touchstone'" is Congress's purpose in passing a certain law. Altria Group, Inc., 129 S. Ct. at 543 (quoting Medtronic, Inc., 518 U.S. at 485). While the plaintiffs assert that Congress's purpose in passing § 205 was to allow increased state regulation over railroad safety, this is flatly contradicted by the language of the statute itself, which provides that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a). The Act authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety . . . ." 49 U.S.C. § 20103(a) (emphasis added). We hold that in passing the FRSA, Congress did not intend it to disturb the existing framework of federal preemption of the railroad industry established by the LIA.

The FRSA has had no impact on the Department of Transportation's oversight of locomotive-related workplace safety issues. The Federal Railroad Administration ("FRA"), an agency within the Department of Transportation, has specifically investigated and addressed the question of asbestos in locomotive components, and concluded that the "FRA does not feel that further action with respect to the presence of asbestos in locomotive cabs is warranted at this time." Federal Railroad Admin., U.S. Dep't of Transp., Rep. To Congress, Locomotive Crashworthiness and Cab Working Conditions (Sept. 1996) at 10-12.

Because the express purpose of the FRSA was to maintain, not decrease, federal uniform regulation of the railroad industry, we

reject the rationale of the Supreme Court of Pennsylvania's <u>Norfolk & Western</u> opinion, and reject the plaintiffs' argument that the FRSA narrowed the scope of LIA preemption as it applies to product liability claims arising out of locomotive parts and appurtenances.

IV.

For these reasons, we will affirm the judgment of the District Court.