**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

13-1595
_____

ANDREW BURGER,

Appellant

v.

SECRETARY OF REVENUE FOR THE COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE;  COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-09-cv-02571)
District Judge:  Hon. John E. Jones, III

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2013

Before:  CHAGARES, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: July 31, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Andrew Burger appeals the order of the District Court for the Middle District of

Pennsylvania granting summary judgment to the Secretary of Revenue for the

Commonwealth of Pennsylvania Department of Revenue and the Commonwealth of

Pennsylvania Department of Revenue (together, the "Department") on his claims under the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Rehabilitation Act of 1973. For the reasons that follow, we will affirm.

I.

Burger began his employment with the Pennsylvania Department of Revenue in August 1999, where he was promoted to the position of Corporation Tax Officer 2 in 2003. Burger has Attention Deficit Disorder, a condition that, over the course of his employment, necessitated two requests for accommodation from the Department of Revenue, which were granted. His last request for accommodation was in November 2001.

In January 2006, Burger received a negative performance evaluation from his supervisor, John Naccarato. In response, Burger submitted a complaint to the Pennsylvania Human Relations Commission ("PHRC"), which claimed that younger coworkers who do not suffer from Attention Deficit Disorder, and who allegedly received similar "Performance and Production rates," were not given negative performance evaluations. Appendix ("App.") 194-95. A PHRC representative, Lynette Taylor, was assigned to Burger's case. After investigating the matter, Taylor related to Burger via e-mail that "[t]he people that I spoke to have no personal vendetta against you and spoke highly of you." App. 465. While underscoring that withdrawing the complaint "is your choice and yours alone," Taylor advised Burger that he "may want to stop holding on to the past and look toward the future and according to my investigation it looks good with Dept. of Revenue." App. 465.

2

Taylor also pointed out that the form for withdrawing PHRC complaints "has room for [Burger's] comments," so that he could memorialize his concerns "on record" with the PHRC. Id. Burger indicated that he would like to do so, and Taylor spoke with counsel for the Department. Though the request was approved, Taylor later testified that she was "not sure if [Department's counsel] was happy about it." App. 460. Burger prepared the "rebuttal" for the PHRC file, but the envelope was received by the Department's Bureau of Human Resources rather than by the PHRC. Burger contends that the letter was purposefully intercepted by the Department. The Department argues, by contrast, that the envelope was mistakenly delivered to the Department's Human Resources group instead of being sent to the PHRC. The staff member at Human Resources who opened the envelope allegedly referred it to others because she was unsure of what to do with its contents. On review, a labor relations analyst noted that the file contained confidential taxpayer information, such as corporate taxpayer documents, so the analyst referred the matter to counsel for the Department.

The Department has a strict policy against revealing confidential information. This policy is included in the Department's Standards of Conduct Manual that Burger received when his employment with the Department began. App. 154-55 ("All information on tax returns and accompanying documents is confidential. . . . Employees may not publish, divulge, disclose or make known in any manner any information which discusses or could identify a taxpayer."). Furthermore, in 2002, Burger signed a Confidentiality Agreement with the Department. That agreement indicates that an employee should "consider everything on tax returns, schedules, worksheets, audit

3

reports, investigative reports, computer files, printouts, listings and books to be **CONFIDENTIAL**." App. 158. Accordingly, an employee "may only access, use, discuss or reveal any of the information with the taxpayers or their specific representative and as appropriate and as an integral part of a work assignment." Id. The Agreement, which is signed by the employee, goes on to state, "I understand that if I violate any of the provisions of this Confidentiality Agreement I will subject myself to the applicable [statutory] penalties specified above, and my employment with the Department of Revenue **WILL BE TERMINATED**." App. 159.

A predisciplinary conference concerning Burger's mailing of the documents was held on December 5, 2007. Burger admitted that the documents he had sent were confidential, but argued that he did not believe that disclosure to the PHRC was in violation of the agreement. On January 4, 2008, Burger was dismissed for violating the confidentiality policy. He argues that the two-week lapse of time between the Department's interception of Burger's letter and the predisciplinary conference suggests that the Department was not sincerely concerned with the protection of taxpayer confidentiality, since the Department did not affirmatively act to ensure that Burger would not attempt to send the documents to Taylor again: "If the Department's sincere purpose had been to avoid disclosure of confidential information, it would have done something in those twenty days to assure that this information would not be re-submitted." Burger Reply Br. 11.

On December 30, 2009, Burger filed a complaint against the Department, alleging he was terminated in retaliation for the events surrounding his PHRC complaint, in

4

violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq., and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(d).[1] He also sought declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## II.

The District Court had jurisdiction over this matter under 28 U.S.C. § 1331, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, applying the same standard employed by the district court. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). That is, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In doing so, "we view all evidence in the light most favorable to the non-moving party." Kurns v. A.W. Chesterton Inc., 620 F.3d 392, 395 (3d Cir. 2010).

## III.

Where, as here, the plaintiff is without direct evidence of either discrimination or retaliation, we analyze such claims using the familiar burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009) (applying McDonnell Douglas framework to ADEA claim); Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (applying McDonnell Douglas to Rehabilitation Act claim); Moore v. City of Phila., 461 F.3d 331,

---

[1] Burger also brought a claim under the Pennsylvania Humans Relations Act, 43 Pa. Stat. § 955(d), but later agreed to drop this state-law claim.

5

342 (3d Cir. 2006) (applying McDonnell Douglas framework to retaliation claim). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination or retaliation. 411 U.S. at 802; see also Moore, 461 F.3d at 342. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory and nonretaliatory reason for its decision to terminate the plaintiff. McDonnell Douglas, 411 U.S. at 802; see also Moore, 461 F.3d at 342. Once the employer meets its "relatively light burden," the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

In order to satisfy its initial burden — that is, in order to establish a prima facie case of retaliation in the employment context — a plaintiff must show the following elements: "(1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005). In the instant case, the District Court held that Burger failed to produce evidence that created a genuine issue of material fact as to the last element, and therefore granted summary judgment to the Department.

We agree. This Court has held that, "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of

6

antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).[2] The District Court found that the time between the protected activity and the allegedly retaliatory action was not sufficiently suggestive because Burger filed his complaint with the PHRC in January 2006, remained employed at the Department until January 2008, and received at least one positive evaluation after lodging the January 2006 complaint. App. 14. Given our case law explaining that "the passage of weeks, months, and years removes any suggestion of retaliatory motive," the District Court held that it "simply [could not] conclude that a twenty-four month span between events is enough to trigger a reasonable inference of retaliatory motive." App. 14-15.

Burger, however, identifies the relevant protected activity as his sending the "detailed rebuttal to his negative evaluation" to the PHRC in November 2007 — not his filing the complaint in January 2006. Like the District Court, we hold that the rebuttal — which accompanied Burger's withdrawal of his complaint against the Department — is insufficient to create a genuine factual dispute about whether or not the "causal

---

[2] In Farrell v. Planters Lifesavers Company, 206 F.3d 271 (3d Cir. 2000), and Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751 (3d Cir. 2004), we also noted that the causal connection can be established through "timing plus other evidence." Williams, 380 F.3d at 760; see also Farrell, 206 F.3d at 280-81 ("[O]ur case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference."). We have considered the "other evidence," including Burger's assertion that the PHRC threatened the entry of default, that no one informed him that he could not share confidential information in his "rebuttal," and that he had previously disclosed confidential information in a union grievance but was not reprimanded, and hold that none of these supports an inference that his termination was in retaliation for engaging in protected activity.

connection" element is met here. To begin with, the rebuttal accompanied Burger's withdrawal of his PHRC complaint against the Department. Furthermore, at least two months passed between the interception of the rebuttal and the adverse employment action (Burger's termination). Even drawing all inferences in Burger's favor, we cannot imagine that a reasonable trier of fact could find it "unusually suggestive" timing that, after continuing Burger's employment for two years and giving Burger a favorable evaluation some months after he filed a complaint against the Department, the Department would retaliate once Burger agreed to withdraw the complaint. See Lauren W., 480 F.3d at 267.

We further hold that there is no genuine issue of material fact as to the alternate ground for establishing a causal connection — a "pattern of antagonism coupled with timing." Id. Burger argues that the alleged contemporaneousness of his termination and the mailing of the rebuttal to PHRC, coupled with the fact that he was assigned responsibility for incoming telephone calls for a few months in early 2007, establish the requisite pattern of antagonism. This Court has held that "[o]nly evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage." In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (quotation marks omitted). We hold that the assignment to answering telephone calls does not under these circumstances constitute a "pattern of antagonism," particularly in light of the positive evaluation Burger received from the Department after he filed his complaint and before he withdrew his complaint.

IV.

8

For the foregoing reasons, we will affirm the judgment of the District Court.