PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-4551, 10-4552, 10-4553, 10-4714,
10-4715, 10-4716, 11-1141, 11-1164 and 11-1170
_____

NEW JERSEY RETAIL MERCHANTS ASSOCIATION

v.

ANDREW P. SIDAMON-ERISTOFF,
Treasurer of the State of New Jersey;
STEVEN R. HARRIS, Administrator of
Unclaimed Property of the State of New Jersey,

Appellants in 10-4551
_____

NEW JERSEY FOOD COUNCIL,
a New Jersey Not-for-Profit Entity

v.

STATE OF NEW JERSEY;
ANDREW P. SIDAMON-ERISTOFF,
Treasurer of the State of New Jersey;
STEVEN R. HARRIS, Administrator of
Unclaimed Property of the State of New Jersey,

Appellants in 10-4552
_____

AMERICAN EXPRESS PREPAID
CARD MANAGEMENT CORPORATION

v.

ANDREW P. SIDAMON-ERISTOFF,
as Treasurer of the State of New Jersey;
STEVEN R. HARRIS, as Administrator of
Unclaimed Property of the State of New Jersey

Appellants in 10-4553
_____

NEW JERSEY RETAIL MERCHANTS ASSOCIATION,

Appellant in 10-4714

v.

ANDREW P. SIDAMON-ERISTOFF,
as Treasurer of the State of New Jersey;
STEVEN R. HARRIS, as Administrator of
Unclaimed Property of the State of New Jersey
_____

NEW JERSEY FOOD COUNCIL,
a New Jersey Not-for-Profit Entity,

Appellant in 10-4715

v.

STATE OF NEW JERSEY;
ANDREW P. SIDAMON-ERISTOFF,
Treasurer of the State of New Jersey;
STEVEN R. HARRIS, Administrator of
Unclaimed Property of the State of New Jersey
_____

AMERICAN EXPRESS PREPAID
CARD MANAGEMENT CORPORATION,

Appellant in 10-4716

v.

ANDREW P. SIDAMON-ERISTOFF,
as Treasurer of the State of New Jersey;
STEVEN R. HARRIS, as Administrator of
Unclaimed Property of the State of New Jersey
_____

AMERICAN EXPRESS PREPAID
CARD MANAGEMENT CORPORATION,

Appellant in 11-1141

v.

ANDREW P. SIDAMON-ERISTOFF,
as Treasurer of the State of New Jersey;
STEVEN R. HARRIS, as Administrator of
Unclaimed Property of the State of New Jersey

3

_____

NEW JERSEY FOOD COUNCIL,
a New Jersey Not-for-Profit Entity,

Appellant in 11-1164

v.

STATE OF NEW JERSEY;
ANDREW P. SIDAMON-ERISTOFF,
Treasurer of the State of New Jersey;
STEVEN R. HARRIS, Administrator of
Unclaimed Property of the State of New Jersey
_____

NEW JERSEY RETAIL MERCHANTS ASSOCIATION,

Appellant in 11-1170

v.

ANDREW P. SIDAMON-ERISTOFF,
as Treasurer of the State of New Jersey;
STEVEN R. HARRIS, as Administrator of
Unclaimed Property of the State of New Jersey
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-10-cv-05059,
3-10-cv-05123 and 3-10-cv-05206)
District Judge:  Honorable Freda L. Wolfson

4

_____

Argued September 12, 2011
Before:  SCIRICA, SMITH and FISHER, *Circuit Judges*.

(Filed:  January 5, 2012)

Robert T. Lougy (Argued)
Gregory A. Spellmeyer
Office of Attorney General of New Jersey
25 Market Street
Richard J. Hughes Complex
Trenton, NJ  08625
        *Counsel for Andrew P. Sidamon-Eristoff,*
        *Steven R. Harris and the State of New Jersey*

Jennifer Borek
James M. Burns (Argued)
Genova Burns
494 Broad Street, 6th Floor
Newark, NJ  07102
        *Counsel for New Jersey Retail Merchants*
        *Association*

Edward T. Kole (Argued)
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
        *Counsel for New Jersey Food Council*

5

Philip R. Sellinger (Argued)
Louis Smith
Greenberg Traurig
200 Park Avenue
P.O. Box 677
Florham Park, NJ  07932

Edward J. Reich
Richard M. Zuckerman (Argued)
SNR Denton US
1221 Avenue of the Americas, 24th Floor
New York, NY  10020
    *Counsel for American Express*
    *Prepaid Card Management Corporation*

Joseph R. Scholz
McCarter & English
100 Mulberry Street
Four Gateway Center, 14th Floor
Newark, NJ  07102-0652
    *Counsel for Amicus Appellee, Limited Brands, Inc.*

Paul J. Watford
Henry Weissmann
Munger, Tolles & Olson
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
    *Counsel for Amicus Appellee, Chamber of*
    *Commerce of the United States*

Michael Houghton
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
*Counsel for Amicus Curiae, Unclaimed*
*Property Professionals Organization*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

In this consolidated appeal, New Jersey Retail Merchants Association ("Retail Merchants"), New Jersey Food Council ("Food Council"), and American Express Prepaid Card Management Corporation ("Amex Prepaid") (collectively, "SVC Issuers") challenge the constitutionality of 2010 N.J. Laws Chapter 25 ("Chapter 25"), which amended New Jersey's unclaimed property statute, N.J. Stat. Ann. § 46:30B (2002), and provided for the custodial escheat of stored value cards ("SVCs" or "gift cards") for the first time.[1]  SVC Issuers filed a motion for preliminary injunction against New Jersey Treasurer Andrew P. Sidamon-Eristoff

[1] This opinion is limited to the challenge brought against 2010 N.J. Laws Chapter 25 ("Chapter 25") with respect to stored value cards ("SVCs").  We discuss the companion case challenging Chapter 25 with respect to travelers checks, *Am. Express Travel Related Services Co., Inc. v. Sidamon-Eristoff*, No. 10-4328, in a separate opinion.

("Treasurer") and New Jersey Unclaimed Property Administrator Steven R. Harris (collectively, "New Jersey" or "State") in the United States District Court on the basis that Chapter 25 violates the Contract Clause, the Takings Clause, the Supremacy Clause, the Substantive Due Process Clause, and the Commerce Clause[2] of the United States Constitution. The District Court granted the motion in part and denied it in part. For the reasons discussed below, we will affirm.

## I. Background

SVCs, often called gift cards, are forms of electronic payment that come in two varieties: "closed loop" and "open loop" cards. Closed loop cards may be redeemed only for merchandise or services from the retailer that issued the card. Retail Merchants and Food Council issue only closed loop cards. Open loop cards may be redeemed at a variety of retail stores, including Internet sites, not affiliated with the issuer of

---

[2] The District Court held that SVC Issuers failed to show a likelihood of success on the Commerce Clause claim. SVC Issuers do not raise this issue on appeal. The issue is only raised in an *amicus* brief filed by Limited Brands, Inc. "Although an *amicus* brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by counsel." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001) (citation omitted); *see also Olmstead v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 436 n.5 (2d Cir. 2002) (stating "an issue raised only by an *amicus curiae* is normally not considered on appeal"). Accordingly, we decline to address the Commerce Clause claim.

the card. Amex Prepaid issues open loop cards. Some open loop cards are redeemable for cash, but most open loop cards issued by Amex Prepaid are only redeemable for merchandise or services.

When the purchaser tenders payment for the face value of the SVC, the issuer, in exchange, "promises to provide to the bearer [of the gift card] merchandise of equal value to the remaining balance" on the card. N.J. Stat. Ann. 56:8-110c (2006). The funds for the SVCs are held in a bank account maintained by the card issuers or in a separate database. Some issuers issue the cards directly, while others use subsidiaries, vendors, or cooperatives to issue the cards. Once the SVC is redeemed for purchase, each issuer recognizes a profit based on the difference between the issuer's cost of acquiring the goods or of offering the services and the retail price paid by the customer.

All fifty states, and the District of Columbia, have a set of unclaimed property laws (often called escheat laws), most of which are based on a version of the Uniform Unclaimed Property Act ("UUPA"). These laws require that once property has been deemed abandoned, the holder turn it over to the state; however, the original property owner still maintains the right to the property. The purpose of unclaimed property laws is to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner. Usually, before turning over abandoned property to the state, the holder must attempt to return the property by contacting the owner, using the owner's name and last known address. If the holder is unable to return the property to the owner and turns it over to the state, the holder provides the state with the name and last known address of the owner. The holder is no longer liable to the property owner once it turns

over the property to the state. The state then makes an effort to reunite the owner with the property. Under New Jersey's custodial escheat statute, the rightful owner may file a claim to recover the property at any time after the property is turned over to the State.

Prior to the enactment of Chapter 25, gift certificates (the predecessors to SVCs) were not covered by New Jersey's escheat statute. *See In re November 8, 1996, Determination of the State of N.J., Dept. of the Treasury, Unclaimed Prop. Office*, 706 A.2d 1177, 1179-81 (N.J. Super. Ct. App. Div. 1998). This was a departure from the UUPA, which did provide for the escheat of gift certificates. *Id.* at 1179. The key reason New Jersey did not escheat gift certificates was that they were not redeemable for cash. *Id.* at 1179-80. If the State were to escheat gift certificates, the issuers would have had to turn over the value of the gift certificates in cash to the State, when they were originally bound to turn over only merchandise or services to the owner. *Id.* at 1179. The Superior Court of New Jersey found that the State's escheat law was not intended to "impose an obligation different from the obligation undertaken to the original owner" of the gift certificates. *Id.* at 1180.

Chapter 25 now provides for the escheat of SVCs, which include closed loop cards, open loop cards redeemable only for merchandise or services, and open loop cards redeemable only for cash. N.J. Stat. Ann. 46:30B-6t (2010). When an SVC is presumed abandoned, "the amount presumed abandoned is the amount credited to the recipient," which is the entire remaining balance on the gift cards. N.J. Stat. Ann. 46:30B-43 (2002). Chapter 25 also authorizes the Treasurer to grant exemptions to certain classes of businesses based on good cause. N.J. Stat. Ann. 46:30B-42.1f (2010).

Finally, the statute does not apply to SVCs "issued under a promotional or customer loyalty program or a charitable program for which no consideration has been tendered." N.J. Stat. Ann. 46:30B-42.1e (2010). Neither does it apply to SVCs issued by an issuer that sold less than $250,000 worth of SVCs in the past year. *Id.*

Pertinent to this case, Chapter 25 presumes SVCs to be abandoned after two years of inactivity and requires issuers to transfer to the State the remaining value on the SVCs at the end of the two-year abandonment period. N.J. Stat. Ann. 46:30B-42.1a (2010) (Chapter 25, § 5a). Under Chapter 25, issuers "shall obtain the name and address of the purchaser or owner of each stored value card issued or sold and shall, at a minimum, maintain a record of the zip code of the owner or purchaser." N.J. Stat. Ann. 46:30B-42.1c (2010) (Chapter 25, § 5c). We will refer to this as the "data collection provision." In addition, the same subsection provides that

> [i]f the issuer of a stored value card does not have the name and address of the purchaser or owner of the stored value card, the address of the owner or purchaser of the stored value card shall assume the address of the place where the stored value card was purchased or issued and shall be reported to New Jersey if the place of business where the stored value card was sold or issued is located in New Jersey.

*Id.* This provision will be referenced as the "place-of-purchase presumption."

Since Chapter 25 was enacted, the Treasurer has issued several guidances interpreting the statute. Notably, the

11

Treasury Guidance dated September 23, 2010 elaborates on the place-of-purchase presumption found in Chapter 5, § 5c:

- If the issuer is domiciled in New Jersey, any unredeemed balances of stored value cards issued prior to the date of this announcement where the names and addresses or zip code of the purchasers or owners were not recorded must be reported to New Jersey.

- If the issuer is not domiciled in New Jersey, any unredeemed balances of stored value cards issued prior to the date of this announcement where the names and addresses or zip code of the purchasers or owners were not recorded should be reported to the state in which the issuer is domiciled in accordance with that state's unclaimed property laws.

- *If the issuer is not domiciled in New Jersey and the issuer's state of domicile exempts this type of property from its unclaimed property statute*, any unredeemed balances of stored value cards issued prior to the date of this announcement where the names and addresses or zip code of the purchasers or owners were not recorded *must be reported to New Jersey if the cards were issued or sold in New Jersey*. In these instances, the issuer must maintain the address of the business where the stored value card was purchased or issued.

Office of the State Treasurer, State of New Jersey, Treasury Announcement FY 2011-03, Guidance on Implementation and Notice of Exemption from Certain Provisions of L.2010, c.25, at 3 (September 23, 2010) (emphasis added) ("Treasury Guidance").

Beginning in September 2010, Retail Merchants, Food Council, and Amex Prepaid filed separate complaints in the United States District Court for the District of New Jersey, seeking declaratory and injunctive relief. They challenged Chapter 25 under the Supremacy Clause, the Due Process Clause, the Commerce Clause, the Contract Clause, and the Takings Clause of the Constitution. They also filed motions for preliminary injunction to prevent the State from enforcing Chapter 25 while the case was pending. In a consolidated November 13, 2010 opinion, the District Court preliminarily enjoined the retroactive application of Chapter 25 to SVCs redeemable for merchandise or services that were issued before the enactment of Chapter 25. The Court also enjoined the prospective enforcement of the place-of-purchase presumption under Chapter 25, § 5c and the Treasury Guidance dated September 23, 2010. The Court, however, declined to prospectively enjoin the data collection provision found in the same subsection, holding that the provision was

severable.[3]  Finally, the Court declined to prospectively enjoin the two-year abandonment period provision under Chapter 25, § 5a.

The State appeals the District Court's grant of preliminary injunction with respect to the retroactive enforcement of Chapter 25 and the prospective enforcement of the place-of-purchase presumption and the accompanying Treasury Guidance.  SVC Issuers cross-appeal the District Court's denial of preliminary injunction as to the data collection provision and the two-year abandonment period. For the reasons discussed below, we will affirm the District Court's orders.

## II.  Standard of Review

"We generally review a district court's [grant or] denial of a preliminary injunction for abuse of discretion[,] but review the underlying factual findings for clear error and

---

[3] The District Court's November 13, 2010 opinion stated that it was "preliminarily enjoin[ing the State] from enforcing subsection 5c of Chapter 25 and Treasury Guidance dated September 23, 2010, which apply a place-of-purchase presumption for all stored value cards . . . ." *Am. Express Travel Related Servs. Co., Inc. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 616-17 (D. N.J. 2010).  SVC Issuers filed a motion for clarification or construction of the November 13 order.  On January 14, 2011, the District Court clarified that it was preliminarily enjoining the place-of-purchase presumption found in Chapter 25, §5c but not the data collection provision under the same subsection because the latter was severable. *Id.* at 619.

14

examine legal conclusions de novo." *Brown v. City of Pittsburgh*, 586 F.3d 263, 268 (3d Cir. 2009) (citation omitted). "We have jurisdiction to review the order [granting or] denying a preliminary injunction under 28 U.S.C. § 1292(a)(1)." *Id.* at 268 n.6.

## III. Discussion

A court must consider four factors when ruling on a motion for preliminary injunction: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest." *Crissman v. Dover Downs Entm't Inc.*, 239 F.3d 357, 364 (3d Cir. 2001). We will examine these factors with respect to each constitutional challenge.

### A. Contract Clause

The Contract Clause under Article I, Section 10, Clause 1 of the U.S. Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." To ascertain whether there has been a Contract Clause violation, a court must first inquire whether the change in State law has "operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (citations omitted); *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987) (citations omitted). If this threshold inquiry is met, the court must then determine "whether the law at issue has a legitimate and important public purpose." *Transport Workers Union of Am., Local 290 v. S.E. Pa. Transp. Auth.*, 145 F.3d

15

619, 621 (3d Cir. 1998). If so, the court must ascertain "whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." *Id.* Because the Contract Clause only protects *existing* contractual relationships and legitimate expectations based on the law in effect *at the time of the contract*, s*ee Troy Ltd. v. Renna*, 727 F.2d 287, 296-99 (3d Cir. 1984), a preliminary injunction based on a Contract Clause violation would only apply retroactively to SVCs issued before the enactment of Chapter 25. We hold that SVC Issuers showed a reasonable likelihood of success on the merits of their Contract Clause claim with respect to SVCs that are redeemable for merchandise or services.[4]

First, under the threshold inquiry, Chapter 25 operates a substantial impairment on the contractual relationships of SVC Issuers. In assessing substantial impairment, the court looks to "the legitimate expectations of the contracting parties," *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n. 17 (1977), and whether the modification imposes an obligation or liability that was unexpected at the time the

---

[4] The District Court held that the SVC Issuers that sell prepaid SVCs *redeemable for cash* failed to show a reasonable likelihood of success on the merits of their Contract Clause claim because they did not point to "any express or implied contractual obligation between themselves and prepaid SVC purchasers that [was] impaired by Chapter 25." *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 609. On appeal, SVC Issuers raise no argument regarding this determination. As such, their Contract Clause claim with respect to SVCs redeemable for cash is waived. *See Gonzalez v. AMR*, 549 F.3d 219, 225 (3d Cir. 2008).

16

parties entered into the contract and relied on its terms. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 247 (1978). The contractual agreement between SVC Issuers and purchasers provides that the balance on the gift card may be redeemed only for merchandise or services; thus, Issuers of closed loop SVCs expected to realize a profit when the bearer redeemed the card for the Issuers' merchandise or services, and the Issuers of open loop SVCs expected to realize a merchant fee, which is a fee Issuers like Amex retained from retailers, when the bearer redeemed the card from retailers that accept open loop SVCs. Decl. of Stefan Happ at 2, *Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556 (D. N.J. 2010) (No. 10-5206). Chapter 25 requires SVC Issuers to submit the value of the SVCs *in cash* to the State at the end of the abandonment period, even though the SVCs are not redeemable for cash under the SVC Issuers' contract with the customer. Because the value of the SVCs includes the expected profit or merchant fee, requiring SVC Issuers to turn over the entire value of the SVC in cash effectively transfers their expected benefits to state custody. By imposing such an unexpected obligation on SVC Issuers, Chapter 25 impaired their contractual relationship.[5]  *See*

---

[5] The State submits that even after the value of the SVCs have been turned over to the State, SVC Issuers that wish to profit from the gift card transactions can honor the card when presented and seek reimbursement from the State. However, if the owner never presents the card and instead directly files a claim with the State, SVC Issuers are removed entirely from the transaction and are unable to collect their expected profits or merchant fee. The same result occurs if the owner does not present the card or file a claim with the State.

17

*Allied Structural Steel*, 438 U.S. at 247 (holding state law retroactively modifying compensation the company had agreed to pay to its employees impaired its contractual relationship by imposing a completely unexpected liability).

This impairment was substantial because SVC Issuers' reliance on the expected profit or merchant fee was vital to its contractual relationship. In *Allied Structural Steel*, Minnesota's Private Pension Benefits Protection Act retroactively modified the company's statutory vesting requirement in the funding of a pension plan, such that "the company's past contributions [to the pension plan] were adequate when made" but "not adequate when computed under the [new] statutory vesting requirement." *Id.* at 246. Because the company's reliance on such contribution requirement was vital to the contract, *id.*, and the Minnesota law imposed a completely unanticipated retroactive obligation upon the company by "[e]ntering a field it had never before sought to regulate," the Court held that the State law substantially impaired the company's contractual relationship. *Id.* at 249. Similarly, SVC Issuers' reliance on the expected profit or merchant fee was vital to their contractual relationships; the expected benefits supported the administrative cost of issuing and processing SVCs and allowed them to issue SVCs without charging the purchaser additional fees beyond the face value of the gift cards. Moreover, Chapter 25 imposed retroactive obligations on SVC Issuers that were unanticipated because New Jersey law never before provided for the escheat of SVCs. Therefore, Chapter 25 substantially impaired the SVC Issuers' contractual relationship by imposing unexpected obligations in an area where reliance was vital.

18

With respect to the second inquiry, it has been recognized that the custodial escheat of abandoned property is a significant and legitimate public purpose. *See Anderson Nat'l Bank*, 321 U.S. 233, 240 (1944) ("[I]t is no longer open to doubt that a state, by a procedure satisfying constitutional requirements, may compel surrender to it of deposit balances, when there is substantial ground for belief that they have been abandoned . . . ."). State escheat law works to remedy the "broad and general social . . . problem" of reuniting abandoned property with its owners. *See Energy Reserves Grp. v. Kan. Power and Light Co.*, 459 U.S. 400, 412 (1983). Chapter 25 furthers this public purpose by requiring SVC Issuers to retain the name and address of the purchaser or owner and securing State custody of the abandoned funds in perpetuity for the owners to reclaim.

However, under the third inquiry, Chapter 25 does not reasonably accommodate the rights of the contracting parties in light of the State's public purpose because it fails to allow SVC issuers to collect their bargained-for expected profits or merchant fees. *See Transport Workers Union of Am., Local 290*, 145 F.3d at 621. Unless the state is a contracting party, courts ordinarily "defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves Grp.*, 459 U.S. at 413 (internal quotation marks and citation omitted). Although New Jersey is not a contracting party in the present case, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate [where] the State's self-interest is at stake." *U.S. Trust Co. of N.Y.*, 431 U.S. at 26.

Here, under the contractual relationship, SVC Issuers had an expectation of realizing a profit or merchant fee when the owner redeemed the gift card. Notably, the purchaser

implicitly accepted that the SVC Issuers had an expectation of realizing a profit or merchant fee when the purchaser agreed to redeem the gift card only in exchange for merchandise or services. Serving the State's public purpose of reuniting abandoned property with owners did not require the State to entirely deprive SVC Issuers of this bargained-for benefit. Like many other states that escheat gift cards, New Jersey could have accommodated the SVC Issuers' expectations by requiring them to turn over a *percentage* of the value of the abandoned gift card, reflecting a discount based on the expected profit or merchant fee, rather than the card's entire remaining value. *See*, *e.g.*, Ala. Code § 35-12-72(a)(17) (escheating 60% of value of gift cards redeemable only for merchandise). This would still allow the State to escheat the owner's bargained-for value of the SVC in order to reunite the funds with the owner. Accordingly, SVC Issuers established there was a reasonable probability that the State violated the Contract Clause by failing to make accommodations that were reasonable and appropriate in light of Chapter 25's purpose.

Having shown a likelihood of success on the merits of their Contract Clause claim, SVC Issuers must also show that they will be irreparably injured by a denial of the preliminary injunction; granting the preliminary injunction will not result in even greater harm to the nonmoving party; and granting the preliminary injunction will be in the public interest. *See Crissman*, 239 F.3d at 364. SVC Issuers will suffer irreparable harm if the preliminary injunction is denied. If the State enforces Chapter 25, SVC Issuers must either face prosecution and fines for noncompliance or turn over, in cash, the remaining value of existing gift cards that have not been redeemed within two years. They would not be entitled to

receive those funds back if Chapter 25 is later found to be unconstitutional, due to state sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating "suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"). Granting the preliminary injunction would not result in a greater harm to the State because the State "does not have an interest in the enforcement of an unconstitutional law[.]" *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) (internal quotation marks and citation omitted). Finally, granting a preliminary injunction would be in the public's interest, including those of retailers and customers, because "the public interest [is] not served by the enforcement of an unconstitutional law." *Id.* All four preliminary injunction conditions having been met, the District Court did not abuse its discretion in enjoining the State from retroactively enforcing Chapter 25 with respect to existing SVCs redeemable for merchandise or services.[6]

---

[6] Although the District Court held that "Chapter 25 could conceivably effect a taking of the gift card sale and redemption," the Court did not need to "rest its decision to grant a preliminary injunction on the Takings claim in light of the . . . Contract[] Clause analysis" in favor of SVC Issuers. *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 612. Because we affirm the District Court's grant of preliminary injunction based on SVC Issuers' Contract Clause claim, we need not reach the Takings Clause claim. For the same reasons, we do not reach Food Council's argument that Chapter 25 violates the derivative rights rule and the manifest injustice rule under the New Jersey state constitution.

### B. Federal statutory preemption under Credit CARD Act

Under the Supremacy Clause of the U.S. Constitution, "the Laws of the United States . . . shall be the supreme law of the Land," and state law is invalid if federal law preempts state law. U.S. Const. art. VI, cl. 2. "Express preemption occurs when a federal law contains express language providing for the preemption of any conflicting state law." *Kurns v. A.W. Chesterton Inc.,* 620 F.3d 392, 395 (3d Cir. 2010) (citation omitted). "Implied conflict preemption occurs when it is either impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 395-96 (internal quotation marks and citations omitted). We address SVC Issuers' arguments regarding express preemption and implied preemption in turn.

### 1. Express preemption

SVC Issuers failed to show a reasonable likelihood of success on the merits of their claim that Chapter 25's two-year abandonment period is expressly preempted by the federal Credit CARD Act of 2009 ("CARD Act"). 15 U.S.C. § 1693l-1(c). Under the CARD Act, a "State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter." 15 U.S.C. § 1693q. The District Court found that "Chapter 25 affords consumers greater protection

22

than that provided by the CARD Act's expiration provision"[7] because "Chapter 25 imposes no time restriction on the consumer's right to recover his or her funds" and allows the consumer holding the SVC to receive "cash back after the abandonment period—a right the holder did not possess under his or her agreement with the SVC issuer." *Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 592 (D. N.J. 2010). According to the District Court, "[w]hile Chapter 25 may make it a more cumbersome process for a consumer to access his/her funds once the funds are presumed abandoned, it ultimately provides greater protection to the consumer. . . ." *Id.*

SVC Issuers submit on appeal that the "greater protection" analysis inappropriately allows the District Court to weigh the relative benefits of different types of consumer protection mechanisms and rewrite the CARD Act, thus, depriving the consumer of the benefits Congress decided to provide and replacing them with different ones. However, ultimately, the controlling language in the CARD Act is clear: "[a] State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter." 15 U.S.C. § 1693q. Congress authorized the weighing of relative consumer

---

[7] Under the Credit CARD Act, "it shall be unlawful for any person to sell or issue a gift certificate, store gift card, or general-use prepaid card that is subject to an expiration date . . . [unless] the expiration date is not earlier than 5 years after the date on which the gift certificate was issued, or the date on which card funds were last loaded to a store gift card or general-use prepaid card; and . . . the terms of expiration are clearly and conspicuously stated." 15 U.S.C. § 1693l-1(c).

23

benefits when it explicitly allowed state laws that provided greater protection than the Act to be shielded from federal preemption. *See id.*

In the alternative, SVC Issuers submit that even if the District Court had the authority to assess whether the State law provided greater consumer protection, Chapter 25 does not actually provide greater protection for consumers. We review the District Court's factual findings for clear error. *Brown*, 586 F.3d at 268. Under this standard, we accept the District Court's ultimate factual determinations unless "that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972). Specifically, SVC Issuers argue that it is unclear how the State will use the zip code of the purchaser to reunite the owner with the escheated gift card funds. However, the data collection provision first and foremost requires SVC Issuers to retain the name and address of the purchaser or owner, which helps the State reunite the property with the owner. Chapter 25, § 5c. Moreover, even if the specific process the State uses to operate its escheat law is unclear, we do not believe that this negates the overall protection Chapter 25 provides to consumers. First, the CARD Act only requires the funds to be available for five years whereas Chapter 25 protects the funds in perpetuity. Second, even with respect to non-expiring gift cards, Chapter 25 still provides greater protection because the consumer is able to reclaim the full cash value of the SVC under Chapter 25 after two years, whereas he would have been able to redeem only merchandise or services using the SVC. Thus, the District Court's finding that Chapter 25 provides greater protection to

consumers than the CARD Act was supported by a reasonable reading of the federal law and state law and was not clearly erroneous.

SVC Issuers' reliance on the language of the Federal Reserve Board's regulation is also misplaced. The Federal Reserve Board, which is responsible for "prescribe[ing] regulations to carry out the purposes of the Act," 15 U.S.C. § 1693b(a), issued a regulation stating that "State law is inconsistent with the requirements of the [CARD Act] . . . if it (i) Requires or permits a practice or act prohibited by the federal law." 12 C.F.R. § 205.12(b)(2). SVC Issuers argue that under Chapter 25, they are "permitted" to dishonor SVCs when the funds are escheated after the two-year abandonment period, and this is "a practice or act prohibited by [the CARD Act]," which requires a minimum five-year expiration period (unless certain disclosure requirements are met). *Id.* Thus, they submit that the two-year abandonment period is inconsistent with and preempted by the CARD Act. However, the Federal Reserve Board explicitly refused to make a general preemption determination based on abandonment periods, despite recognizing that many state laws provide for an abandonment period of shorter than five years. Board of Governors of the Federal Reserve System, Final Rule, Regulation E (12 CFR 205), Docket No. R-1377, at 69 (Aug. 22, 2010) ("certain state laws require issuers of unused gift cards to remit the remaining funds to the state . . . after a period of time – typically three to five years after the card is sold or used"). The Board reasoned that "state escheat laws vary significantly" and "the regulation provides that a state law is not inconsistent with any provision if it is more protective of consumers." *Id.* at 70. Therefore, the Board recognized that a state law is not preempted simply because it

25

provides for an abandonment period shorter than five years, if the state law is ultimately more protective of consumers. This reading of the Board's regulation and explanation supports the District Court's "greater consumer protection" analysis.

## 2. Implied preemption

SVC Issuers also failed to show that Chapter 25 is likely to be impliedly preempted by the CARD Act. Implied conflict preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (citations omitted). SVC Issuers contend that Chapter 25 thwarts Congress' consumer protection objective by preventing consumers from easily accessing the SVC funds from the retailer and instead requiring them to file a claim with the state after two years. We reject this argument. The five-year expiration provision was designed to ensure that consumers had access to their funds for at least the first five years after purchasing the gift cards. 15 U.S.C. § 1693l-1(c). Chapter 25's two-year abandonment period furthers this interest by protecting the funds in perpetuity and allowing consumers to access those funds in cash by filing a claim with the State. SVC Issuers failed to present any evidence that Congress was concerned with the exact method by which consumers could access those funds.

In addition, SVC Issuers submit that the two-year abandonment period would deprive them of the economic incentive to adopt longer expiration periods because their expected profit would be turned over to the State at the end of the two-year period, regardless of the SVC's expiration date. And because longer expiration periods benefit customers,

26

they argue that Chapter 25's effect on this incentive structure stands as an obstacle to the customer protection purpose of the CARD Act. But the new abandonment period renders longer expiration periods unnecessary because after two years from the date of purchasing or using the SVC, the customers can access the funds in cash in perpetuity. Thus, the two-year abandonment period does not stand as an obstacle to the congressional purpose of protecting customer interests.

Because we agree with the District Court that SVC Issuers failed to show a likelihood of success on their federal statutory preemption claim with respect to the two-year-abandonment period found in Chapter 25, Section 5a, we need not address the remaining preliminary injunction factors.

**C.     Federal common law preemption under** *Texas v. New Jersey*

SVC Issuers submit that Chapter 25 and the Treasury Guidance are preempted by the escheat priority rules announced in *Texas v. New Jersey (Texas)*, 379 U.S. 674, 681-82 (1965), and reaffirmed in *Pennsylvania v. New York (Pennsylvania)*, 407 U.S. 206, 217-18 (1972), and *Delaware v. New York (Delaware)*, 507 U.S. 490, 499-500 (1993). The State contends that its implementation of Chapter 25 through the Treasury Guidance comports with the priority rules established by the Supreme Court. We agree with the District Court that SVC Issuers demonstrated a reasonable likelihood of success on their claim that Chapter 25's place-of-purchase presumption as well as the Treasury Guidance are preempted under federal common law. The language of Chapter 25's place-of-purchase presumption directly contradicts the second priority rule announced in *Texas*. And even if the Guidance

were a proper exercise of the Treasurer's power[8], it is also preempted under *Texas*. Moreover, we agree that the data collection provision is severable from the place-of-purchase presumption; thus, the data collection provision may stand alone even if the place-of-purchase presumption is preempted under federal common law.

### 1.      Chapter 25

Under the Supremacy Clause of the U.S. Constitution, "the Laws of the United States . . . shall be the supreme law of the Land," and state law is invalid if federal law preempts state law. U.S. Const. art. VI, cl. 2. It is undisputed that state law can be preempted by federal common law as well as federal statutes. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 518 (1988) (Brennan, J., dissenting) (stating federal common law can displace state law in limited instances, such as areas involving interstate disputes). "Implied conflict preemption occurs when it is either impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Kurns*, 620 F.3d at 395-96 (internal quotation marks and citations omitted).

---

[8] The District Court held that the Treasury Guidance was a proper exercise of the Treasurer's power. *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 602-03. We need not address this issue because we hold that SVC Issuers showed a likelihood of success on their claim that the Treasury Guidance is preempted under federal common law.

In *Texas*, the Supreme Court established two priority rules to resolve conflicts among states over unclaimed intangible property. 379 U.S. at 680-82. When a property is deemed abandoned, the first opportunity to escheat the property belongs to "the State of the last known address of the creditor, as shown by the debtor's books and records." *Id.* at 682. We refer to this as the primary rule. If the primary rule fails because there is no record of any address for a creditor or because the creditor's last known address is in a State which does not provide for the escheat of abandoned property, the secondary rule gives the right to escheat to the State in which the debtor is incorporated until another state comes forward with proof that it has a superior right to escheat. *Id.*

Under Chapter 25's place-of-purchase presumption, in all instances where the address of the purchaser is unknown, the address of the place of purchase is substituted for the address of the purchaser.[9] Then, in cases where the address of the purchaser for an SVC purchased in New Jersey is unknown, New Jersey would escheat the property under Chapter 25; however, under the secondary rule in *Texas*, the SVC Issuer's state of incorporation would escheat the property. Therefore, when the SVC Issuer is not incorporated in New Jersey, it would be impossible for the Issuer to

---

[9] Chapter 25's place-of-purchase presumption provides that "[i]f the issuer of a stored value card does not have the name and address of the purchaser or owner . . . the address of the owner or purchaser of the stored value card shall assume the address of the place where the stored value card was purchased." N.J. Stat. Ann. 46:30B-42.1c (Chapter 25, § 5c).

comply with both Chapter 25's place-of-purchase presumption and federal common law under *Texas* because two states cannot both escheat the same abandoned property. *See Texas*, 379 U.S. at 676 (citing *W. Union Tel. Co. v. Pennsylvania*, 368 U.S. 71, 82 (1961)) ("[T]he Due Process Clause of the Fourteenth Amendment prevents more than one State from escheating a given item of property. . . ."). Accordingly, the place-of-purchase presumption is preempted under *Texas*. *See Kurns*, 620 F.3d at 395-96.

## 2. Treasury Guidance

On appeal, the State contends that Chapter 25, as implemented through the Treasury Guidance, comports with the *Texas* priority rules. For the following reasons, we hold that SVC Issuers met their burden of showing that both Chapter 25 and the Treasury Guidance are likely preempted under the Supreme Court precedent in *Texas, Pennsylvania*, and *Delaware*.

To evaluate SVC Issuers' federal preemption claim regarding the Treasury Guidance, we find it helpful to first review the federal common law in question. In *Texas v. New Jersey*, the Supreme Court resolved a claim brought by Texas against New Jersey, Pennsylvania, and the Sun Oil Company for declaratory and injunctive relief regarding the right to claim abandoned intangible property through escheat. 379 U.S. at 675. Four different possible rules were submitted by the parties regarding the priority in which states should be allowed to escheat abandoned property. *Id.* at 678. Texas argued that the State with the "most significant 'contacts' with the debt" should be given the right to escheat, *id.*, while Pennsylvania contended that the state in which the debtor's principal office is located should have priority to escheat over

30

other states. *Id.* at 680. The Supreme Court rejected both options because these tests created too much uncertainty and would inevitably have led the courts to make case-by-case determinations based on specific facts. *Id.* at 678-80. This result would directly contradict the Court's intent to settle the escheat disputes "once and for all by a clear rule which [would] govern all types of intangible obligations like these and to which all States may refer with confidence." *Id.* at 678. In the end, the Court adopted Florida's proposed rule,[10] giving the state of the creditor's last known address the first priority right to escheat, because this rule fairly recognized that the creditor, not the holder, was the owner of the property, and the "rule involves a factual issue simple and easy to resolve, and leaves no legal issue to be decided." *Id.* at 681. The Court gave the debtor's domiciliary state the second right to escheat the abandoned property, until another state proved its superior right to escheat, because this rule had the "obvious virtue of clarity and ease of application" that created the "needed certainty" in this area of dispute among states.[11] *Id.* at 680, 682.

---

[10] The *Texas v. New Jersey* Court permitted Florida to intervene "since it claimed the right to escheat the portion of Sun [Oil]'s escheatable obligations owing to persons whose last known address was in Florida." *Texas v. New Jersey*, 379 U.S. 674, 677 (1965).

[11] However, the Court declined to give the debtor's domiciliary state the first priority right to escheat, as proposed by New Jersey, because it would not have been fair to let such a "minor factor" allow a fortuitous state in which the debtor "happened to incorporate itself" to claim rights to abandoned property all over the country. *Texas*, 379 U.S. at 680.

As evidenced by the *Texas* Court's rationale behind fashioning the priority rules, its primary concern was to unambiguously and definitively resolve disputes among states regarding the right to escheat abandoned property. Indeed, the Court explicitly recognized that the "case could have been resolved otherwise, for the issue here [was] not controlled by statutory or constitutional provisions or by past decisions. . . ." *Id.* at 683. The Court's ultimate resolution was "fundamentally a question of ease of administration and of equity." *Id.*

The Supreme Court reaffirmed the *Texas* priority rules in two subsequent cases: *Pennsylvania v. New York*, 407 U.S. at 214-15, and *Delaware v. New York*, 507 U.S. at 498-99. In *Pennsylvania*, because Western Union did not keep records of the creditor's identity or last known address, the debtor's state of incorporation was positioned to claim a large portion of the unclaimed funds. 407 U.S. at 211-12. In response, Pennsylvania proposed that for cases involving transactions where the debtor does not keep records showing the address of the creditor, "the[s]tate of origin of the transaction," *i.e.*, the state of the place of purchase, should have the right to escheat the abandoned property, rather than the state of the debtor's domicile as was required under the second priority rule in *Texas*. *Id.* at 213-14. The Court rejected Pennsylvania's request, recognizing that "the place-of-purchase . . . rule[] might permit intangible property rights to be 'cut off or adversely affected by . . . a forum having no continuing relationship to any of the parties'" to the transaction. *Id.* at 213. In addition to finding that the state of purchase had insufficient ties to the creditor or debtor to justify giving it the right to escheat, the Court held that "the likelihood of a 'windfall' for [the state of the debtor's

32

domicile was not] a sufficient reason for carving out an exception to the Texas rule." *Id.* at 214.

In the present case, New Jersey similarly adopts a place-of-purchase presumption, which, under the Treasury Guidance, allows the State to escheat abandoned property by virtue of the fact that the property was purchased in New Jersey.[12] But New Jersey, as the state in which the SVC was purchased, does not have a sufficient connection with any of the parties to the transaction to claim a right to escheat the abandoned property. *See Pennsylvania* 407 U.S. at 213. As the Court denied Pennsylvania's place-of-purchase rule because "only a [s]tate with a clear connection to the creditor or debtor may escheat," *Delaware*, 507 U.S. at 504 (discussing Court's holding in *Pennsylvania*), the District Court correctly enjoined New Jersey's place-of-purchase presumption that would have allowed the State to escheat SVCs when it lacked a clear connection to the owner or issuer.

The State submits that without the place-of-purchase presumption, SVC Issuers that are incorporated in states that do not escheat abandoned property would unfairly have the

---

[12] Under the Treasury Guidance, the place-of-purchase assumption applies when the issuer does not have the name and address of the owner or purchaser, the issuer is not domiciled in New Jersey, and the state of domicile exempts the property from its unclaimed property statute. Office of the State Treasurer, State of New Jersey, Treasury Announcement FY 2011-03, Guidance on Implementation and Notice of Exemption from Certain Provisions of L.2010, c.25, at 3 (September 23, 2010) ("Treasury Guidance").

right to retain the abandoned property. But the *Pennsylvania* Court held that "the likelihood of a 'windfall' for [the state of the debtor's domicile was not] a sufficient reason for carving out an exception to the *Texas* rule." 407 U.S. at 214. Likewise, the potential of a windfall for the SVC Issuers that are incorporated in states that do not escheat abandoned property does not merit departing from the established priority rules. To depart from the *Texas* priority rules here would require us "to do precisely what [the Supreme Court] said should be avoided – that is, 'to decide each escheat case on the basis of its particular facts or to devise new rules of law to apply to ever-developing new categories of facts.'" *Id.* at 215 (citing *Texas*, 379 U.S. at 679).

Our analysis is consistent with the Supreme Court's recognition that a state's power to escheat is derived from the principle of sovereignty. As the *Delaware* Court recognized, "the secondary rule protects the interests of the debtor's [s]tate as *sovereign* over the remaining party to the underlying transaction." 507 U.S. at 504 (emphasis added). The Supreme Court has long recognized that the sovereign maintains authority over abandoned property, including the right to escheat the property. *See Texas*, 379 U.S. at 675. The ability to escheat necessarily entails the ability not to escheat. To say otherwise could force a state to escheat against its will, leading to a result inconsistent with the basic principle of sovereignty. Various considerations might motivate states not to exercise custodial escheat. For example, because companies might find the absence of state custodial escheat attractive, states may want to incentivize companies to incorporate in their jurisdiction by choosing not to escheat abandoned property. In reaffirming the *Texas* rule, the Supreme Court "detect[ed] no inequity in rewarding a

34

State whose laws prove[d] more attractive to firms that wish to incorporate." *Delaware*, 507 U.S. at 507. Accordingly, the Court intended that a state's decision, regarding the exercise of custodial escheat under the secondary rule, would be respected under the principle of sovereignty.

But the place-of-purchase presumption, executed in accordance with the Treasury Guidance, allows New Jersey to infringe on the sovereign authority of other states. Even when states decide not to exercise custodial escheat with the intent of allowing the holders to maintain custody of the property, the place-of-purchase presumption gives New Jersey the right to make the holder, SVC Issuers in this case, turn over the property to the State. When fashioning the priority rules, the Supreme Court did not intend such a result, which would give states the right to override other states' sovereign decisions regarding the exercise of custodial escheat.

Finally, we must remember that the *Texas* Court's primary concern was to clearly and definitively resolve disputes among states regarding the right to escheat abandoned property. 379 U.S. 678-83. However, allowing states to implement additional priority rules like the one proposed by New Jersey would result in competing state claims to abandoned property. If we assume that Chapter 25's place-of-purchase presumption were to apply in New Jersey and that another state enacted a law that escheated property based on the issuer's principal place of business, the two states' laws would collide when an SVC issuer with its principal place of business in the other state sold an SVC in New Jersey. This would result in "so much uncertainty and threaten so much expensive litigation that the States might find that they would lose more in litigation expenses than

35

they might gain in escheats." *Texas*, 379 U.S. at 679. Such conflict would offend the Supreme Court's intent to use the two priority rules to resolve disputes among states with administrative ease and equity. *See Texas*, 379 U.S. at 683. Because the State law would stand as an obstacle to executing the purpose of the federal law, *see Kurns*, 620 F.3d at 395-96, SVC Issuers satisfied their burden of showing that Chapter 25's place-of-purchase presumption and the Treasury Guidance are likely preempted under *Texas*, *Pennsylvania*, and *Delaware*. SVC Issuers also satisfied the remaining preliminary injunction factors for the same reasons set forth in our discussion of their Contract Clause claim. All four preliminary injunction conditions having been met, the District Court did not abuse its discretion in preliminarily enjoining Chapter 25's place-of-purchase presumption.

### 3. Severability of the data collection provision

SVC Issuers moved for clarification or construction of the District Court's November 13 Order, which provided that "the State is preliminarily enjoined from enforcing subsection 5c of Chapter 25 and Treasurer Guidance dated September 23, 2010, which apply a place-of-purchase presumption for all stored value cards . . . ." *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 616-17. The District Court clarified that its order preliminarily enjoined the place-of-purchase presumption of subsection 5c of Chapter 25 but not

36

the data collection provision[13] under the same subsection because the latter was severable.  *Id.* at 619.  In addition, it concluded that SVC Issuers failed to meet their burden of showing that the data collection provision should be preliminarily enjoined.  *Id.* at 623.

The issue of severability of a state statute is a question of state law, *Old Coach Dev. Corp. v. Tanzman*, 881 F.2d 1227, 1234 (3d Cir. 1989), and requires an inquiry into legislative intent.  *Affiliated Distillers Brands Corp. v. Sills*, 289 A.2d 257, 258 (N.J. 1972) (per curiam).  Under this inquiry, we must determine whether "the objectionable feature [can] be excised without substantial impairment of or conflict with the over-all legislative purpose . . . ."  *N.J. Chapter, Am. Inst. of Planners v. N.J. State Bd. of Prof'l Planners*, 227 A.2d 313, 319 (N.J. 1967).  To sever a part of a statute, "there must be such a manifest independence of the parts as to clearly indicate a legislative intention that the constitutional insufficiency of the one part would not render the remainder inoperative."  *Affiliated Distillers Brands Corp.*, 289 A.2d at 259 (internal quotation marks and citations omitted).

SVC Issuers submit that the data collection provision was not meant to be a stand-alone provision.  They argue that

---

[13] The data collection provision states that issuers "shall obtain the name and address of the purchaser or owner of each stored value card issued or sold and shall, at a minimum, maintain a record of the zip code of the owner or purchaser."  N.J. Stat. Ann. 46:30B-42.1c (Chapter 25, § 5c). It precedes the place-of-purchase presumption provision under the same subsection.

the State Legislature enacted the place-of-purchase presumption as a safe harbor to the data collection provision, thereby allowing SVC Issuers that find the data collection provision too onerous to opt-out and rely on the place-of-purchase presumption.  We reject their argument because the consumer protection purpose of Chapter 25 evinces that the State Legislature intended the data collection provision to stand alone in case a related provision were struck down.  Chapter 25 was enacted to ensure that SVC owners' rights to the funds would be not forfeited by the passage of time and to reunite customers with their property.  The data collection provision requiring issuers to maintain records of the purchaser or owner furthers this purpose by making it more likely that the State will be able to reunite the owner with the abandoned SVC funds.  Thus, the Legislature did not intend the constitutional insufficiency of the place-of-purchase presumption to render the data collection inoperative.

When "different parts of the statute are not so intimately connected with and dependent upon each other so as to make the statute one composite whole[,] unconstitutional parts may be rejected and the constitutional parts may stand." *Lane Distr. v. Tilton*, 81 A.2d 786, 796-97 (N.J. 1951) (citations omitted).  An example of the sort of dependency that makes the statute one composite whole is where a provision defining terms used in the statute cannot be severed from the remainder of the statute without rendering the statute meaningless or confusing. *Id.* at 797.  However in the instant case, the data collection requirement is not so intimately connected with the place-of-purchase presumption.  Although the latter works to override the *Texas* priority scheme by presuming that the address of the purchaser is that of the place of purchase, the former aids the State in

determining what state is entitled to escheat the SVC in accordance with the *Texas* priority scheme.

SVC Issuers argue, in the alternative, that the data collection provision itself is preempted by federal common law because it does not further the *Texas* priority scheme. In their view, the *Texas* line of cases requires states to determine the last known address of the actual owner of the abandoned property in order to properly apply the first priority rule. They submit that retaining the zip code of the *purchaser* does nothing to reunite the abandoned property with the actual owner, often the *recipient*, of the gift card. We agree with the District Court's rejection of this argument. *Texas* and its progeny "authorize [s]tates to require issuers of intangible property to collect the last known address of the purchaser and to rely on that address in reuniting the 'owner' with the abandoned property." *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 621. Moreover, the Supreme Court explained, "either a payee or a sender" may redeem a money order because either can be considered the creditor. *Delaware*, 507 U.S. at 503 (citing *Pennsylvania*, 407 U.S. at 213). Similarly, either the purchaser or recipient of the gift card may redeem the gift card because either can be considered the creditor. And the Supreme Court "has consistently permitted states to escheat based on the last known address of the purchaser." *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 621 (citing *Pennsylvania*, 407 U.S. at 215 and *Delaware*, 507 U.S. at 503).

In sum, the District Court did not abuse its discretion in denying a preliminary injunction of the data collection provision. Analysis of the State Legislature's intent suggests that Chapter 25's data collection provision is severable from the place-of-purchase presumption. In addition, SVC Issuers

did not meet their burden of showing that the data collection provision on its own is likely preempted by federal common law. Accordingly, we affirm the District Court.

### D. Substantive Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. It is well established that the Due Process Clause contains both a procedural and substantive component. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992)). Substantive due process contains two lines of inquiry, one that applies when a party challenges the validity of a legislative act, and one that applies to the challenge of a non-legislative action. *Id.* In a case challenging a legislative act, as here, the act will withstand scrutiny if (1) there is a legitimate state interest that (2) could be rationally furthered by the statute. *Id.* (citation omitted). The rational basis test, although "not a toothless one," *Mathews v. Lucas*, 427 U.S. 495, 510 (1976), requires significant deference to the legislature's decision-making and assumptions. *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995). "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it[.]'" *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

We first address whether there is a legitimate state interest. The State identifies several legitimate interests relevant to our analysis. In general, taking custody of

40

abandoned property is a legitimate state interest. *See Delaware*, 507 U.S. at 497 ("States as sovereigns may take custody of or assume title to abandoned personal property. . . ."). Specifically, the State has a legitimate interest in protecting New Jersey customers and modernizing its unclaimed property laws, which were the purposes explicitly identified by the State Legislature. Assemb. Budget Committee, Statement to Assemb. No. 3002, June 24, 2010 (stating that "the primary purposes of [Chapter 25] are to protect New Jersey consumers from certain commercial dormancy fee practices and modernize the State's unclaimed property laws").

SVC Issuers protest that the primary purpose of enacting Chapter 25 was to raise revenue for the State, which is not a legitimate state interest. But even if revenue-raising was the primary purpose behind enacting Chapter 25, as long as it was not the only legitimate purpose underlying the legislation, Chapter 25 will pass rational basis examination. *See Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980) (stating the "legitimate purpose justifying the provision need not be the primary purpose of the provision"). Here, the State has sufficiently identified several state interests, including protecting consumers and modernizing its unclaimed property laws. Thus, we now examine whether these purposes are rationally furthered by Chapter 25. *See Nicholas*, 227 F.3d at 139.

SVC Issuers submit that even if Chapter 25 was enacted to further a legitimate state interest, the two-year abandonment period, the two exemptions to Chapter 25, and the data collection provision do not rationally relate to that goal. We review each challenged provision in turn.

SVC Issuers first argue that the two-year abandonment period is not rationally related to protecting consumers when consumers are better protected under a five-year abandonment period under the CARD Act. Thus, they contend that the State had no rational basis for choosing an abandonment period of two years rather than an abandonment period of at least five years. However, the District Court correctly found that "Chapter 25 affords consumers greater protection than that provided by the CARD Act's expiration provision" because "Chapter 25 imposes no time restriction on the consumer's right to recover his or her funds" and allows the consumer holding the SVC to receive "cash back after the abandonment period—a right the holder did not possess under his or her agreement with the SVC issuer." *Am. Express Travel Related Servs.*, 755 F. Supp. 2d at 592. Although the SVC Issuers argue that there was no legislative finding regarding this two-year abandonment period, under rational basis review, "legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315 (citations omitted). Thus, Chapter 25's two-year abandonment period, even without specific legislative findings, rationally relates to the legitimate state interest of protecting consumers.

SVC Issuers next contend that Chapter 25's two exemptions to New Jersey's escheat laws are not rationally related to a legitimate state interest. Under the first exemption, single issuers that sell less than $250,000 in gift cards in any given year are exempt from Chapter 25. According to the SVC Issuers, small businesses that sell more than $250,000 in gift cards or that are franchised are not exempt from Chapter 25, so they are placed at a competitive disadvantage for no rational reason. This argument fails to

defeat rational basis scrutiny, as it merely reflects SVC Issuers' policy disagreement with the New Jersey Legislature. *See Casey*, 505 U.S. at 849 (holding that under the rational basis scrutiny for substantive due process, courts are not free to invalidate state law because they disagree with the underlying policy decisions). The State could conceivably want to protect smaller businesses and businesses that do not derive substantial revenue from gift cards. Requiring these businesses to implement procedures to retain the purchaser information in accordance with the data collection provision could be prohibitively expensive compared to the revenue generated from gift card sales and drive them out of business. Also, the State could have rationally decided to apply its escheat laws to small businesses operating as franchises under a common trade name; these businesses are able to market that trade name in selling SVCs redeemable at other locations, which allows them to be more profitable and to operate without state protection offered by the exemption.

Under the second exemption, gift cards issued under a promotional or customer loyalty program or a charitable program, where the owner of the card did not tender any monetary or other consideration, are not subject to Chapter 25. SVC Issuers argue that this exemption irrationally applies only to issuers that do not receive any payment but does not apply to issuers that receive partial payment for the card. Again, this argument only reflects the SVC Issuers' policy disagreement with the New Jersey Legislature and fails to defeat rational basis scrutiny. *See Casey*, 505 U.S. at 849. The Legislature could have rationally concluded that an issuer offering cards for charitable purposes in exchange for monetary or other consideration may seek to obtain a tax benefit for the difference between the payment received and

43

the full value of the card. In this case, the issuer would not need additional protection through Chapter 25's exemption provision. The Legislature also may have rationally decided to encourage issuers to receive no consideration in exchange for cards issued under promotional, loyalty, or charitable programs.

Finally, SVC Issuers contend that the data collection provision does not rationally relate to the legitimate state interest of protecting consumers because retaining the zip code of the purchaser does not help the State reunite the property with the true owner of the gift card, which is usually the recipient of the card. However, retaining the zip code of the purchaser or owner rationally furthers the State's legitimate interest in determining which state has the right to escheat the abandoned property under the first priority rule in *Texas*. *See Papasan v. Allain*, 478 U.S. 265, 289 (1986) (stating state has legitimate interest in taking steps to implement valid federal law); *Delaware*, 507 U.S. at 497-98 (holding, under the primary rule, "the power to escheat the debt should be accorded to the State of the creditor's last known address"). Moreover, even when the property cannot be returned to the owner, the State's unclaimed property law rationally relates to the goal of protecting the abandoned property by safeguarding it in a trust account and making it available for consumers to reclaim in perpetuity. For all the reasons stated, we agree with the District Court that SVC Issuers failed to establish a reasonable likelihood of success on their substantive due process claim. Thus, we need not address the remaining preliminary injunction factors.

## IV. Conclusion

We hold that SVC Issuers met their burden of showing a reasonable likelihood of success on the merits of their Contract Clause claim and satisfied the remaining preliminary injunction factors; accordingly, we affirm the District Court's order preliminarily enjoining Chapter 25's retroactive application with respect to existing SVCs redeemable for merchandise or services. SVC Issuers also successfully established that the place-of-purchase presumption and the accompanying Treasury Guidance are likely preempted by federal common law; thus, we affirm the District Court's grant of preliminary injunction with respect to the prospective application of the place-of-purchase presumption and the accompanying Treasury Guidance. We also hold that the data collection provision is severable from the place-of-purchase presumption, so the District Court did not err in enjoining the latter without enjoining the former. Finally, we hold that SVC Issuers failed to show a reasonable likelihood of success on the merits of their federal statutory preemption claim and their substantive due process claim. For all the foregoing reasons, we will affirm the District Court's orders.