**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4355
_____

BRRAM, INC.; HOLLY BUSSEY; WILLIAM G. LYNCH; RICHARD J. DELELLO,
Petitioners

v.

FEDERAL AVIATION ADMINISTRATION
Respondent

ALLEGIANT AIR LLC,*
Intervenor

(* Pursuant to the Court's Order dated 1/20/17)
_____

On Application for Review of a Decision and Order of the
Federal Aviation Administration
(FAA No. C070 AMDT 165 Cert WX0A151)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2017

Before: CHAGARES, VANASKIE, FUENTES, *Circuit Judges*

(Filed: January 9, 2018 )

_____

OPINION**
_____

---

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

BRRAM, Inc., Holly Bussey, William G. Lynch, and Richard Delello (collectively "Petitioners") appeal a Federal Aviation Administration ("FAA") decision to allow Allegiant Air LLC ("Allegiant") to operate at Trenton-Mercer Airport ("Trenton"). For the following reasons, we will affirm.

**I.**

Although the parties in this case have previously been involved in numerous appeals regarding Trenton,[1] we need only discuss the facts relevant to the case before us.

Trenton is a commercial airport owned by the Mercer County Board of Chosen Freeholders in Ewing Township, New Jersey. In 2016, Allegiant requested that the FAA amend its Operating Specifications[2] to allow it to operate at Trenton. In its request, Allegiant explained that it would conduct fourteen operations (seven takeoffs and seven landings) at Trenton per week. Allegiant also submitted an assessment of the noise impact its proposed operations would have on the area surrounding Trenton. The assessment stated that Allegiant's operations at Trenton would not have a significant impact on noise levels in the area. On November 2, 2016, the FAA issued a Record of Decision ("Decision") approving Allegiant's requested amendment. The Decision discussed Allegiant's noise assessment along with a noise assessment prepared by

---

[1] *See Bd. of Supervisors of Lower Makefield Township v. Fed. Aviation Admin.*, 3d Cir. 06-2929; *BRRAM v. FAA*, 670 Fed. Appx. 50 (3d Cir. 2016).

[2] According to the FAA, an airline's Operating Specifications are "the terms an air carrier must comply with to ensure an air carrier operates safely in air transportation." Joint Appendix ("J.A.") 35.

2

Trenton, which was based on a forecast of air traffic twenty years into the future, and concluded that "no significant noise impacts will occur as a result of Allegiant's operations."[3]  The Petitioners—most of whom reside or operate in Pennsylvania across the Delaware River from Trenton—appealed.[4]

## II.

Under the National Environmental Policy Act, federal agencies, including the FAA, are required to prepare Environmental Impact Statements for "major Federal actions significantly affecting the quality of the human environment."[5]  However, an agency need not prepare an Environmental Impact Statement if its action falls within one of its categorical exclusions, which are defined as "categor[ies] of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency."[6]  An agency's list of categorical exclusions must be published in the Federal Register,[7] and an agency's procedures must "provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect."[8]  Before an agency can

---

[3] J.A. 35.

[4] We have jurisdiction under 49 U.S.C. § 46110(a).  We review agency actions using an "arbitrary and capricious" standard. *Del. Dep't of Nat. Resources & Envtl. Control v. U.S. Army Corps of Eng'rs*, 685 F.3d 259, 271 (3d Cir. 2012).

[5] 42 U.S.C. § 4332(C).

[6] 40 C.F.R. § 1508.4.

[7] 40 C.F.R. § 1507.3(a).

[8] 40 C.F.R. § 1508.4.

conclude that its action is categorically excluded, the agency must consider whether any of its delineated extraordinary circumstances apply.[9]

The FAA has published a list of categorical exclusions and has also created a list of twelve extraordinary circumstances that require more thorough environmental review.[10] In this case, the FAA considered Allegiant's request to amend its Operating Specifications and determined that no extraordinary circumstances existed. The FAA then concluded that its categorical exclusion for "[o]perating specifications and amendments that do not significantly change the operating environment of the airport" applied and that therefore preparing an Environmental Impact Statement was unnecessary.[11]

The Petitioners challenge the FAA's determination that Allegiant's request did not present any extraordinary circumstances. Specifically, the Petitioners take issue with the FAA's conclusion that its extraordinary circumstance regarding noise—which precludes a determination that a categorical exclusion is applicable when an action "has the potential for a significant impact" on "noise levels of noise sensitive areas"—did not apply to Allegiant's request.[12] The Petitioners contend that the FAA acted arbitrarily and capriciously because it only evaluated the impact that Allegiant's fourteen proposed operations would have on noise in the area surrounding Trenton. Instead, the Petitioners assert, the FAA was required to consider the impact of Allegiant's expansion beyond the fourteen operations it proposed because the FAA has explained that once an airline is

---

[9] FAA Order 1050.1F at ¶¶ 5-6.2.
[10] *Id.* at ¶¶ 5-2, 5-6.
[11] FAA Order 1050.1F at ¶ 5-6.2(d).
[12] FAA Order 1050.1F at ¶ 5-2(b).

permitted to operate at an airport, the FAA cannot control the number of flights the airline will operate.[13]

The Petitioners' assertions that the FAA only considered Allegiant's fourteen proposed operations in conducting its noise analysis are incorrect. In fact, as the FAA explained in its Decision, the FAA considered both Allegiant's noise analysis, which only accounted for the fourteen proposed operations, and a noise analysis prepared by Trenton that was based on a forecast twenty years into the future of all foreseeable air traffic by Allegiant and other airlines operating at Trenton. Neither noise analysis showed that Allegiant's operation at Trenton would have a significant impact on noise in the area under the FAA's prevailing standards for significance.

The Petitioners do not challenge the validity of Trenton's noise analysis. For example, they do not argue that the analysis is based on improper assumptions about future air traffic or that its conclusions are erroneous.[14] Accordingly, we conclude that the FAA

---

[13] The Township of Lower Makefield ("Township") submitted an amicus brief in support of the Petitioners' position in this matter. The Township seconds the Petitioners' arguments regarding the FAA's noise analysis.

[14] Although the Petitioners do not challenge the methodology behind the noise analyses the FAA cited in its Decision, the Township argues that the FAA acted arbitrarily and capriciously by relying on Allegiant's noise analysis because the methodology it used was not the model required by FAA Order 1050.1F Appendix B § B-1.2 for a "detailed noise analysis." The Township's argument does not hold water. While FAA Order 1050.1F Appendix B § B-1.2 does require that specific methodologies be used for a "detailed noise analysis," FAA Order 1050.1F Appendix B § B-1.1 explains that "[a]ircraft noise screening may rule out the need for more detailed noise analysis." Here, Allegiant's analysis functioned as a noise screening, and its results indicated that a more detailed noise analysis was unnecessary. Furthermore, Allegiant's analysis used a methodology (the Area Equivalent Method) approved for noise screening by FAA 1050.1F Desk Reference § 11.1.3. *See* FAA 1050.1F Desk Reference § 11.1.3, *available at*

5

did not act arbitrarily and capriciously in determining that its extraordinary circumstance regarding noise was not applicable to Allegiant's request to amend its Operating Specifications.

Thus, because the Petitioners have waived the rest of their arguments concerning the FAA's Decision in this case,[15] we will affirm the FAA's Decision.

## III.

For the foregoing reasons we will affirm the FAA's Decision to approve Allegiant's requested amendment to its Operating Specifications.

---

https://www.faa.gov/about/office_org/headquarters_offices/apl/environ_policy_guidance/policy/faa_nepa_order/desk_ref/media/11-noise.pdf.

[15] The Petitioners make some additional arguments challenging the FAA's determinations. First, they argue in their Reply brief that the FAA should have provided public notice of Allegiant's proposed amendment and that the situation at issue presents an extraordinary circumstance because the impact of Allegiant's operations was "likely to be highly controversial on environmental grounds." FAA Order 1050.1F at ¶ 5-2(b)(10). These issues have been waived because they were not raised in the Petitioner's initial brief. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court.") (internal quotations omitted). Second, the Petitioners attempt to join the Township's challenge to the FAA's analysis of the effect that Allegiant's operation at Trenton would have on air quality in the area. However, again, the Petitioners failed to adequately raise such argument in their initial brief, so it is waived. *Id.* Accordingly, we need not consider the issue. *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 383 n.2 (3d Cir. 2012) ("'Although an *amicus* brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by counsel.'") (quoting *Universal City Studios, Inc. v. Corley,* 273 F.3d 429, 445 (2d Cir. 2001)).